FILED IN
COURT OF CRIMINAL APPEALS

August 17, 2015

ABEL ACOSTA, CLERK

PD-0245-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/17/2015 8:33:15 AM
Accepted 8/17/2015 9:43:31 AM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

| | | |
|---|---|---|
| JUAN BLEA, | § | |
| Appellant | § | |
| v. | § | No. PD-0245-15 |
| THE STATE OF TEXAS, | § | |
| Appellee | § | |

---

## APPELLANT'S BRIEF ON THE MERITS

---

FROM THE DECISION OF THE COURT OF APPEALS FOR

THE SECOND DISTRICT OF TEXAS, FORT WORTH

IN CAUSE NUMBER 02-13-00221-CR,

*JUAN BLEA v. THE STATE OF TEXAS*, AND

FROM THE 362ND JUDICIAL DISTRICT COURT, DENTON COUNTY, TEXAS,

THE HONORABLE BRUCE MCFARLING, JUDGE, PRESIDING

AND, AS SITTING JUDGE, THE HONORABLE SHERRY SHIPMAN FROM

THE 16TH JUDICIAL DISTRICT COURT, DENTON COUNTY, TEXAS IN

CAUSE NUMBER F-2011-0993-D

**JOSEPH C. BOSWELL**
Texas State Bar No. 00794971
BOSWELL LEGAL GROUP, P.C.
1504 EAST MCKINNEY STREET,
SUITE 200
DENTON, TEXAS  76209
(940) 382-4711
(940) 349-9922 (FAX)
joe@boswelldefense.com

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of the parties and persons interested in the outcome of this cause:

(A)  Juan Blea, Appellant

  11700 Lebanon Drive, Apt. 1111
  Frisco, Texas 75035

(B)  Denver McCarty and Leah Harbour, counsel for Appellant at trial

  1512 East McKinney Street, Suite 200
  Denton, Texas  76209

(C)  Joseph C. Boswell, counsel for Appellant on appeal

  1504 East McKinney Street, Suite 200
  Denton, Texas  76209

(D)  The State of Texas, by and through Paul Johnson, Denton County Criminal District Attorney; and Catherine Luft, Andrea Simmons, Dustin Gossage, and Michael Graves, Assistant Criminal District Attorneys

  1450 East McKinney
  Denton, Texas  76209

(E)  Lisa C. McMinn, State Prosecuting Attorney

  209 West 14th Street, Suite 203
  P.O. Box 13046
  Austin, Texas  78711-3046

(F)     Honorable Bruce McFarling, Presiding Judge for the 362nd District Court

        Denton County Courts Building
        1450 East McKinney Street, 3rd Floor
        Denton, Texas  76209-4524

(G)     Honorable Sherry Shipman, as Sitting Judge for the 362nd District Court

        Denton County Courts Building
        1450 East McKinney Street, 3rd Floor
        Denton, Texas  76209-4524

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ................................................................ii-iii

INDEX OF AUTHORITIES ........................................................................ v-vii

STATEMENT REGARDING ORAL ARGUMENT ................................................. 2

STATEMENT OF THE CASE................................................................................ 2

APPELLANT'S RESPONSE TO THE STATE'S
ISSUE PRESENTED FOR REVIEW.................................................................. 3

STATEMENT OF FACTS................................................................................. 3

SUMMARY OF THE ARGUMENT ................................................................... 8

ARGUMENT ..................................................................................................... 8

    Legal Sufficiency Standard for Review................................................... 8

    Legal Authority Regarding Serious Bodily Injury................................. 9

    Second Court of Appeals' Review and Application of Legal
    Authority to the Facts ...........................................................................13

    Response to State's Bare Assertions.......................................................16

    Conclusion ..............................................................................................17

PRAYER...........................................................................................................20

CERTIFICATE OF COMPLIANCE ...............................................................20

CERTIFICATE OF SERVICE..........................................................................21

# INDEX OF AUTHORITIES

**Statutes, Codes, and Rules**          **Page**

Tex. Penal Code § 1.07(a)(34) ..................................................................... 10

Tex. Penal Code § 1.07(a)(8) ...................................................................... 10

Tex. R. App. P. 69.3 ....................................................................................... 8

**Cases**

*Black v. State*
  637 S.W.2d 923 (Tex. Crim. App. 1982) ............................................... 11

*Blea v. State*
  2015 WL 510954 (Tex. App.—Fort Worth 2015) ............................... *passim*

*Brooks v. State*
  323 S.W.3d 898 (Tex. Crim. App. 2010) ................................................ 8

*Carter v. State*
  678 S.W.2d 155 (Tex. App.—Beaumont 1984, no pet.) ...................... 14

*Clayton v. State*
  235 S.W.3d 772 (Tex. Crim. App. 2007) ................................................ 9

*Coshatt v. State*
  744 S.W.2d 633 (Tex. App.—Dallas 1987, pet. ref'd) ......................... 15

*Eustis v. State*
  191 S.W.3d 879
  (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) .............................. 10

*Hart v. State*
  581 S.W.2d 675 (Tex. Crim. App. 1979) .............................................. 15

*Hernandez v. State*
  946 S.W.2d 10 (Tex. App.—El Paso 1997, no pet.) ..........................................10, 11

*Isassi v. State*
  330 S.W.3d 633 (Tex. Crim. App. 2010) ..............................................................9

*Jackson v. Virginia*
  443 U.S. 307 (1979) ...............................................................................................9

*Lane v. State*
  111 S.W.3d 203 (Tex. App.—Eastland 2004) .................................................12, 13

*Moore v. State*
  739 S.W.2d 347 (Tex. Crim. App. 1987) ...............................................10, 11, 12, 15

*Patterson v. State*
  No. 11-06-00209-CR, 2008 WL 564880
  (Tex. App.—Eastland 2008, pet. ref'd)
  (not designated for publication) ...............................................................16-17, 17

*Pedro v. State*
  No. 01-88-00197-CR, 1988 WL 139708
  (Tex. App.—Houston [1st Dist.] Dec. 22, 1988, no pet.)
  (not designated for publication) ........................................................................ 17

*Sizemore v. State*
  387 S.W.3d 824 (Tex. App.—Amarillo 2013, pet. ref'd)................. 10, 11, 14, 15

*Tibbs v. Florida*
  457 U.S. 31 (1982)...................................................................................................9

*Villarreal v. State*
  716 S.W.2d 651 (Tex. App.—Corpus Christi 1986, no pet.) .............................. 12

*Webb v. State*
  801 S.W.2d 529 (Tex. Crim. App. 1990) (en banc) (per curiam)...................... 11

*Williams v. State*
    235 S.W.3d 742 (Tex. Crim. App. 2007) ...................................................9, 19

*Williams v. State*
    696 S.W.2d 896 (Tex. Crim. App. 1985) ..................................................... 10

## **Other Authorities**

Burton, LEGAL THESAURUS 418 (1980) ......................................................... 15

# IN THE
## COURT OF CRIMINAL APPEALS OF TEXAS
### AUSTIN, TEXAS

| | | |
|---|---|---|
| JUAN BLEA, | § | |
|     Appellant | § | |
|   v. | § | No. PD-0245-15 |
| THE STATE OF TEXAS, | § | |
|     Appellee | § | |

---

## APPELLANT'S BRIEF ON THE MERITS

---

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

COMES NOW, JUAN BLEA, hereinafter referred to as Appellant or Juan, by and through his attorney of record, JOSEPH C. BOSWELL, and respectfully submits his brief on the merits urging that the judgment of the Second District Court of Appeals be upheld.

## STATEMENT REGARDING ORAL ARGUMENT

The State did not request oral argument, and Appellant concurs that it is not necessary to this review.  Moreover, in its June 24, 2015, notice granting the State's Petition for Discretionary Review, this Court announced that oral argument would not be permitted.

## STATEMENT OF THE CASE

Appellant was convicted of the first-degree felony of Aggravated Assault of a Family Member. The jury assessed his punishment at five years confinement. On appeal Appellant challenged the legal sufficiency of evidence regarding both the element of serious bodily injury and the element of use of a deadly weapon. Holding that the evidence was insufficient to show that Appellant caused serious bodily injury, but sufficient to show that he used his hand as a deadly weapon, the Second Court of Appeals reversed and remanded with instructions to (1) modify the judgment to reflect a conviction for the lesser-included second-degree felony aggravated assault and (2) conduct a new trial on punishment for the second-degree felony. The State filed its Petition for Discretionary Review, which was granted by this Court. Appellant filed his Petition for Discretionary Review and Cross Petition for Discretionary Review seeking review of the portion of the Opinion overruling Appellant's challenge to the legal sufficiency of the deadly weapon

2

element of this offense. Appellant's Petition and Cross Petition was denied by this Court.

**APPELLANT'S RESPONSE T O
THE
STATE 'S ISSUE PRESENTED FOR
REVIEW**

Appellant urges this Court to dismiss the State's Petition for Review as improvidently granted since there is no support for the speculative conclusions levied in that Petition, or the State's subsequent Brief on the Merits. Alternatively, Appellant asserts that the Second Court of Appeals properly applied the correct standard of review in performing a legal sufficiency analysis of whether the State proved that the complainant suffered serious bodily injury and in reaching its conclusion that she did not.

**STATEMENT OF FACTS**

Appellant agrees and adopts the Second Court of Appeals' findings of fact relating to the issue presented to this Court; however, Appellant briefly reiterates these facts relating to the injuries suffered by the complaining witness.

The complaining witness, Justina, was living with Juan's parents, Cruz and David Blea, at the time of this offense, and they both observed her injuries shortly after the assault (2 R.R. at 25-26, 73, 81). Cruz described bruising on Justina's face and testified that Justina said she was hurting after the assault (2 R.R. at 76-77). David also confirmed that there was bruising on Justina's eye and face but said she appeared to be breathing fine whenever he was around

3

her (2 R.R. at 85).

The police officer who responded to a later-placed 9-1-1 call testified that the complaining witness had scrapes and lacerations on her face, a bruised and cut left eye, and a red mark that indicated early bruising on her arm (2 R.R at 117). He said she also complained of pain in her stomach and difficulty breathing.

Justina's treating nurse at Parkland Hospital, Kristie Brown, conceded that the only injuries she actually documented in her own notes were "bruising" and "fractures" (2 R.R. at 63-65). Brown testified that no surgeries or procedures were done to treat or repair any fractures (2 R.R. at 70). She agreed that those injuries completely healed on their own (2 R.R. at 70). She acknowledged that the only "treatment" Justina received for her rib injuries was pain medication and deep-breathing exercises (2 R.R. at 69).

Brown testified that she also "knew of" other injuries, including an "injury to her lung" (2 R.R. at 63-64). However, Brown did not treat any purported lung injury, conceding that any injury to the complaining witness's lungs had been treated prior to her arrival at Parkland (2 R.R. at 65). The witness did explain the term "pneumothorax" and the kinds of problems a person who suffered that type of injury might have (2 R.R. at 65). Ms. Brown further conceded that Justina's lungs were working normally and she was only receiving oxygen (2 R.R. at 69).

Additionally, Brown testified that Justina had "an injury to her liver and an injury to her chest" (2 R.R. at 52, 56, 61, 63, 68). She "observed" Justina "every four to six hours, mashed on her abdomen, routinely checking her liver and how she reacted each time we touched her" and "monitored and recorded whether it got better or worse over the hospital stay" (2 R.R. at 62). While she characterized injuries to the liver generally as being treated "seriously," Ms. Brown was not able to testify that Justina's particular liver injuries were serious (2 R.R. at 66-67). In fact, Brown explicitly agreed that Justina's liver enzymes were normal and that Justina *did not* suffer from any of the conditions for which they had her under observation (2 R.R. at 68-69). She conceded that at all times Justina's liver was functioning properly and her condition continually improved (2 R.R. at 69). She agreed that Justina was on bed rest for 24 to 36 hours in the hospital because of the general fear that exists with any patient that if that patient is up walking around, he or she can start bleeding (2 R.R. at 68).

Jennifer Fassett Hernandez, the complaining witness's mother, testified she observed Justina at the hospital; however, she could not recall Justina's having any trouble breathing and said Justina was not wearing an oxygen mask (2 R.R. at 94-96). She did relay that she had to leave the room while Justina received a chest tube. Ms. Hernandez also described bruises she

observed on Justina's eye and acted as the sponsoring witness for pictures of those injuries (2 R.R. at 97, 98-108; State's Exhibits 20-43, 46). The witness further testified that she was aware that the doctors suggested Justina not lift anything over 25 pounds but admitted that she did not know whether Justina was actually capable of lifting anything over 25 pounds. Importantly, she did not actually attend any of the follow-up doctor appointments with Justina where this information was allegedly relayed (2 R.R. at 110-13). Furthermore, she disclosed that Justina could, in fact, walk and was even standing at the hospital and had merely suffered some pain because of the assault (2 R.R. at 109-10).

In describing her own injuries, Justina testified that she suffered a "cut" under her eye, a collapsed lung, and a lacerated liver (2 R.R. at 39, 42, 43). She testified she was treated at Baylor Medical Center and transported to Parkland Hospital, where she remained three to four days for observation (2 R.R. at 42-43). She returned to work after approximately one month and took prescribed pain medication (2 R.R. at 44-45). She explained that she did not return to her former position as a waitress, but took a new job as hostess "just so I didn't have to deal with a lot of people. I didn't want to go back to doing waitressing just yet" and because "everybody at Champps kind of knew

what happened, kind of the regulars. That was just kind of my way of avoiding everybody." (2 R.R. at 45).

Justina specifically testified that she had no permanent disfigurement or protracted loss of a bodily member or organ as a result of the injuries (2 R.R. at 47, 48, 51-53). She said she was able to be out and about and do things after her release from the hospital and that she recovered fully (2 R.R. at 48). She denied having lost the use of any part of her body for any extended time (2 R.R. at 51-52).

The State also introduced medical records from Baylor Hospital and Parkland Hospital (State's Exhibits 17, 18; 2 R.R. at 54-56). While those were initially admitted by the trial court, upon further consideration of Appellant's properly levied trial objections, those records were withdrawn from evidence and were never published to the jury (3 R.R. at 26-27). The records did not, and cannot, constitute any evidentiary support for Appellant's conviction.[1] Both parties agreed that this evidence should not have been included in the record of this case, and the Court of Appeals recited in its majority opinion that it concurred and did not consider those erroneously included exhibits in

---

[1] Appellant and the State filed a motion with the Second Court of Appeals attesting that the exhibits were not properly a part of the record despite their inclusion by the court reporter as exhibits on appeal.

reaching its decision. Appellant likewise urges this Court that this withdrawn exhibit cannot be considered in its review herein.

## SUMMARY OF THE ARGUMENT

First, Appellant asserts that this Court should dismiss the State's Petition for Discretionary Review as improvidently granted. *See* Tex. R. App. P. 69.3. The State failed to show any support for its summarily and speculatively drawn conclusions that the Fort Worth Court applied an incorrect standard of review and/or based its determination on "ameliorated" injuries rather than untreated ones. The Second Court of Appeals' majority opinion clearly reviewed the evidence relating to "untreated" injuries suffered by the complaining witness. Alternatively, the Second Court of Appeals properly applied the correct standard of review in determining the sufficiency of the evidence and concluding that it was not legally sufficient to support a conviction for aggravated assault as alleged in the Indictment, as the injuries sustained by the complaining witness were not proved to constitute serious bodily injury.

## ARGUMENT

### Legal Sufficiency Standard For Review

The Texas Court of Criminal Appeals held in *Brooks v. State*, 323 S.W.3d 898, 895 (Tex. Crim. App. 2010), that there is no meaningful

distinction between the factual and legal sufficiency standards; thus, the appellate courts review the evidence under only the legal sufficiency standard. When reviewing sufficiency of the evidence, the courts view all of the evidence in the light most favorable to the verdict to determine whether a rational jury could find the essential elements of the offense beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. Stat*e, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The court's duty as the reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams*, 235 S.W.3d at 750. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

**Legal Authority Regarding Serious Bodily Injury**

The Second Court of Appeals properly found that the evidence was insufficient to support that Juan caused "serious bodily injury" to his wife. That court concluded that nothing in the record suggested that the injury to the complaining witness ever created a substantial risk of death, that she suffered any protracted loss of any bodily member or organ, or that she

9

suffered any serious permanent disfigurement. *Blea v. State*, 2015 WL 510954, at *1 (Tex. App.—Fort Worth 2015).

Since there are no wounds that constitute serious bodily injury *per se,*[2] this Court has directed the appellate courts to evaluate each case on its facts to determine if the evidence is sufficient to allow a jury to conclude that the injury falls within the definition of serious bodily injury. *See Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987); *see also Sizemore v. State*, 387 S.W.3d 824, 828 (Tex. App.—Amarillo 2013, pet. ref'd); *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Hernandez v. State*, 946 S.W.2d 10, 111 (Tex. App.—El Paso 1997, no pet.).

This Court has also explained that there must be a meaningful distinction between bodily injury and serious bodily injury. *Moore,* 739 S.W.2d at 349, 352. "Bodily injury" is defined as "physical pain, illness or any impairment of physical condition." Tex. Penal Code § 1.07(a)(8). "Serious bodily injury" is defined in the Texas Penal Code as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(34). In *Moore* this Court further

---

[2] Even a knife or gunshot wound, although caused by a deadly weapon, is not *per se* serious bodily injury. *Williams v. State*, 696 S.W.2d 896, 898 (Tex. Crim. App. 1985).

recited that "if an injury does not endanger life, it cannot be considered a serious bodily injury," as contemplated by the Penal Code. *Moore* at 353. Furthermore, bodily injury cannot be elevated to serious bodily injury simply by "postulating potential complications which are not in evidence." *Hernandez*, 946 S.W.2d at 112 (*citing Moore*, 739 S.W.2d at 352). The State is required to present relevant and probative evidence from which the trier of fact can infer beyond a reasonable doubt that the injury itself resulted in serious bodily injury or created an appreciable risk of death. *See Moore*, 739 S.W.2d at 352. For example, the necessity of surgery alone has been found to be insufficient to establish serious bodily injury. *See Webb v. State*, 801 S.W.2d 529, 533 (Tex. Crim. App. 1990) (en banc) (per curiam) (wherein victim had surgery to repair a broken bone in the victim's hairline, but the Court found serious bodily injury was not proved); *Black v. State*, 637 S.W.2d 923 (Tex. Crim. App. 1982) (wherein the Court held that surgery on a gunshot wound that resulted in a three-day hospital stay to recover and several months to heal was insufficient to prove serious bodily injury); *see also Sizemore*, 387 S.W.3d at 829.

In addition, the presence of a "period of recuperation" does not elevate bodily injury to serious bodily injury but, at best, shows only some impairment of physical condition. *Moore,* 739 S.W.2d at 356. In fact, this Court

in *Moore* found that though the appellant stabbed the complainant in the back and cut the complainant's nose, because there was no serious risk of death present from the stab wound, nor any evidence of protracted loss or impairment of the function of the nose, no serious bodily injury resulted. *Id.*, 739 S.W.2d at 351-55.

In another instance, following this Court's directives, the Corpus Christi Court of Appeals found that a victim sustaining two fractured ribs and could not raise his arms for two weeks due to the pain from the fractures, did not have injuries constituting serious bodily injury either. *Villarreal v. State*, 716 S.W.2d 651, 652 (Tex. App.—Corpus Christi 1986, no pet.).

Similarly, in *Lane v. State*, the Eastland Court concluded that the evidence at issue was also legally insufficient to prove serious bodily injury. 111 S.W.3d 203, 209 (Tex. App.—Eastland 2004). In *Lane* the complaining witness originally reported that she fell down the stairs and hurt herself but later admitted that her husband had struck her several times in the head and forehead with a closed fist, as well as kicked her in the stomach and the back. *Id.* at 204, 206. The testimony at that trial showed that the complaining witness vomited, was nauseated, and suffered pain in the right chest and rib region, as well as the occipital region as a result of the assault; however, she did not have any obvious deformities and was rationally able to communicate.

*Id.* at 205. The nurse who treated the *Lane* complainant at the hospital testified that the complainant had contusions on the right side of her head and old bruises on her breasts, was tender in the gastric region, and complained of back pain in the lumbar region. *Id.* at 206. The nurse also agreed that the complainant did not have any broken bones, her vital signs were stable, and she did not have any permanent disfigurement or life-threatening injuries. *Id*.

**Second Court Of Appeals' Review And Application Of Legal Authority To The Facts**

In its summary of the facts in this case, the Second Court of Appeals specifically recited all the evidence offered as proof of the actual injuries suffered by the complaining witness. *Blea*, 2015 WL 510954, at **1-2, 3-5. Thereafter, the appellate court specifically reviewed and analyzed all of that evidence to determine what level of injury suffered by the complainant was actually proved. The Fort Worth Court explicitly recited that it considered "all the evidence" in holding under a properly applied standard of review that "there is no evidence from any source that would allow a jury to conclude or infer beyond a reasonable doubt that the complainant's injuries created a substantial risk of death." *Blea* at *5

From its review under the proper standard, the Second Court of Appeals determined that "The only evidence that the complainant could have suffered

serious bodily injury arose from the State's inquiry [of the treating nurse] whether 'any injury to the liver [is] treated seriously or minimally' by Brown's 'profession.'" *Blea* at \*\*4-5. Brown's response to that inquiry was that any injuries to the liver are treated seriously because "[i]njuries to the liver can cause a patient to bleed to death very quickly" and "[k]nowing that there is an injury to the liver and why it is and whether it is actively bleeding or has developed a blood clot to the liver makes a decision point for what the surgeons do and what we do for the patient." The Fort Worth Court stressed that this was no evidence that the complainant actually suffered from such a condition. In doing so, the Court emphasized:

> "But Brown did not testify that the complainant suffered from such a condition. No one did. Indeed, Brown monitored the complainant to determine whether a substantial risk of death or any risk of death developed from any injury, and it did not."

*Blea* at \*5.

It is also correct that if the injury and its effects are obvious, serious bodily injury can be established without a physician's testimony. *See Sizemore*, 387 S.W.3d at 828; *Carter v. State*, 678 S.W.2d 155, 157 (Tex. App.—Beaumont 1984, no pet.). While it is not necessary for serious bodily injury to be established through an expert, it has been deemed "the better way" to prove up the issue. *Carter*, 678 S.W.2d at 157. The majority opinion in this case

14

recognized that there was also no lay opinion supporting serious bodily injury in addition to no basis for any expert opinion supporting that conclusion.

Serious bodily injury can also be proved simply by the person who sustained the injury at issue expressing an opinion about the seriousness of that injury. *Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. 1979); *Sizemore*, 387 S.W.3d at 828; *Coshatt v. State*, 744 S.W.2d 633, 636 (Tex. App.—Dallas 1987, pet. ref'd). However, in the instant case the Second Court of Appeals recognized that the complaining witness in this case actually testified in opposition to that proposition, stating that she did not sustain any serious permanent disfigurement or protracted loss of the use of any bodily member. *Blea* at *3.

In order to prove serious bodily injury by "protracted loss," the State must show that injuries are "either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Moore*, 739 S.W.2d at 352 (*citing* Burton, LEGAL THESAURUS 418 (1980)). In the instant case the Second Court of Appeals also recited that it carefully examined the record for evidence supporting serious permanent disfigurement or protracted loss or impairment of any bodily member or organ and concluded that there was none. *Blea* at *5.

In its evaluation of protracted loss in this case, the Fort Worth Court recited the following as support:

> "She testified that she had suffered neither. The only suggestion of such loss or impairment is Jennifer's testimony that the doctors told the complainant not to lift more than twenty-five pounds. Jennifer did not say how long the limitation was to last but said that it was because of the complainant's ribs. Jennifer also agreed that 'we don't know whether or not [the complainant] was physically capable [of lifting], but she followed their advice'.
>
> The complainant testified that she was fully recovered. She also testified that she was able to go out and about some as soon as she was released from the hospital."

*Blea* at *5.

**Response To State's Bare Assertions**

The State alleges in its Brief that the Second Court failed to consider the "extent of the injuries as inflicted" rather than the extent of the injuries "after the effects" of those injuries "had been ameliorated by medical treatment" (State's Brief at 8). However, there is no support for the State's conclusion. Moreover, the State does not point to any specific place in the Second Court's majority opinion that supports its contentions. Moreover, a review of the Court of Appeals' analysis in this case indicates that the contrary is true.

As authority for its contentions, the State references a case also cited by Chief Justice Livingston in her dissenting opinion in this case, that of *Patterson v. State*, No. 11-06-00209-CR, 2008 WL 564880, at *3 (Tex.

16

App.—Eastland 2008, pet. ref'd) (not designated for publication). However, the *Patterson* case is distinguishable from the evidence offered at trial in support of the conviction here. In *Patterson* an emergency room physician specifically testified that he treated the victim who had suffered a pneumothorax, which, if left untreated could cause death. There was no such corollary testimony in Appellant's case.

Justice Livingston also referred to *Pedro v. State,* No. 01-88-00197-CR, 1988 WL 139708, at *2 (Tex. App.—Houston [1st Dist.] Dec. 22, 1988, no pet.) (not designated for publication) ("[T]he possibility that [a collapsed lung] could cause death, combined with the testimony that the complainant's lung was punctured, does support a finding that [a knife] was capable of causing 'serious bodily injury.'"), as authority. However, the sole point of error in *Pedro* related to whether there was insufficient evidence to support the finding that a deadly weapon was utilized in the commission of the offense. *Id.* Thus the inquiry in *Pedro*, whether a deadly weapon was used, is not relevant to the inquiry at hand in the instant case, whether actual serious bodily injury was proved.

**Conclusion**

Appellant's situation is not one where an appellate court acted as a thirteenth juror and rejected evidence that serious bodily injury occurred;

17

rather, it is one where the State failed to offer evidence at trial sufficient to prove that serious bodily injury occurred. The Second Court of Appeals determined that Nurse Brown's testimony could not legally support serious bodily injury. While she may have testified "generally" that certain injuries could be deemed "serious," she was unable to testify that *Justina's specific injuries were serious* (2 R.R. at 66). Justina's liver enzymes were normal, and she did not suffer from any of the conditions they were observing her for, like peritonitis (2 R.R. at 68-69). Brown confessed that *at all times* Justina's liver was functioning properly and her condition continually improved (2 R.R. at 69). She further conceded that Justina's lungs were working normally (2 R.R. at 69). She agreed that the only "treatment" for Justina's rib injuries was pain medication and deep-breathing exercises (2 R.R. at 69). Brown testified that no surgeries or procedures were done to treat or repair either the rib fractures or maxillary fractures (2 R.R. at 70).

The State argued at trial that a "lacerated liver" or "collapsed lung" "in and of itself is a lengthened-in-time impairment," essentially asserting these injuries are "per se" serious bodily injury and/or "protracted" impairment (3 R.R. at 10). However, there was no testimony or evidence offered to support that assertion, and that assertion is not supported by legal authority.

Moreover, as trial counsel for Appellant pointed out, there was no evidence that Justina couldn't breathe or that her lungs weren't operating correctly.

None of the testimonies from any lay witnesses supported the allegation of serious bodily injury under any part of the definition either. While Justina's mother testified to observing Justina at the hospital, she also said she could not recall Justina having any trouble breathing and did not recall Justina wearing an oxygen mask (2 R.R. at 94-96). Likewise, no other lay witness testimony was offered to support legally sufficient evidence of serious bodily injury either.

This Court is well aware of the standard when reviewing sufficiency of the evidence. Part of that review includes ensuring that the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams*, 235 S.W.3d at 750. Perhaps the medical records or testimony from a treating physician might have supported the verdict; however, it is not the job of the appellate courts to speculate and infer that evidence when it does not plainly exist in the record. Reversing the Second Court of Appeals' determination in this case would essentially relieve the State of its obligations under the law and encourage other appellate courts to infer what the evidence does not prove whenever the State fails to meet its burden of proof. The Second Court of Appeals did not sit as a thirteenth juror; it merely held the

State to its burden of proof. This Court should uphold the Court of Appeals' decision and deny the State's requested relief.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays this Court will either dismiss this appeal as improvidently granted or affirm the holding of the Second Court of Appeals.

Respectfully submitted,

*/s/ Joseph C. Boswell*
**JOSEPH C. BOSWELL**
BOSWELL LEGAL GROUP, P.C.
1504 EAST MCKINNEY STREET
SUITE 200
DENTON, TEXAS 76209
(940) 382-4711
(940) 349-9922 (FAX)

ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in the foregoing Brief is 4235, having been calculated using Microsoft Word, the program used in the preparation of this Brief.

*/s/ Joseph C. Boswell*
**JOSEPH C. BOSWELL**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Petition has been served on Andrea Simmons, Attorney for Appellee, 1450 East McKinney Street, Denton, Texas 76209; and Lisa McMinn, State Prosecuting Attorney, 209 West 14th Street, Suite 203, P. O. Box 13046, Austin, Texas 78711-3046, by electronic service on this, the 17th day of August 2015.

/s/ Joseph C. Boswell

**JOSEPH C. BOSWE**