NO. 07-10-00157-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

APRIL 30, 2012

ANTOINETTE LAMAYES SWEAT, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 12TH DISTRICT COURT OF WALKER COUNTY;

NO. 23694; HONORABLE DONALD KRAEMER, JUDGE

Before QUINN, C.J., and CAMPBELL and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Antoinette Lamayes Sweat appeals from her jury conviction of the offense of aggravated assault causing serious bodily injury and the resulting sentence of three years of imprisonment, probated for ten years and restitution in the amount of $31,014.35. She presents two issues. We will affirm.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

## Background

Appellant was charged by a March 2007 indictment with "intentionally, knowingly, or recklessly caus[ing] serious bodily injury to Gregory Merchant by cutting the said Gregory Merchant with a sharp object."[2]  Appellant plead not guilty and was tried before a jury.

Evidence was presented to show appellant, a female friend, and the victim, Merchant, returned from a Christmas party.  Merchant was "pretty drunk" and was sitting in a vehicle with the two women when he and appellant began to argue.  Appellant became upset, got out of the car, and put a box cutter against the car's tire, puncturing it.  Appellant and Merchant then fought physically, leaving Merchant with several cuts.  Photographs of some of the cuts, taken by police at a Huntsville hospital, were introduced at trial.  Medical records from that hospital and from the Houston hospital to which Merchant was flown, also were introduced.

The jury found appellant guilty as charged in the indictment.  Appellant requested that the court determine her punishment and following the presentation of punishment evidence, the trial court sentenced her as noted.  This appeal followed.

## Analysis

Sufficiency of the Evidence

In appellant's first issue, she contends the evidence cannot sustain her conviction because there is insufficient evidence to show Merchant suffered serious bodily injury from the cuts with the box cutter.

---

[2] *See* Tex. Penal Code Ann. § 22.02(a)(1) (West 2010).

We evaluate the sufficiency of the evidence to support conviction in a criminal appeal under the standard set forth by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, we consider all the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 319; *Brooks v. State,* 323 S.W.3d 893, 899 (Tex.Crim.App. 2010).

The *Jackson* sufficiency standard requires that we defer to the jury's determinations concerning the credibility of evidence and weight to be given it. *Brooks*, 323 S.W.3d at 899, 916. The fact-finder, the jury in this case, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic to ultimate facts. *Id.* The fact-finder may accept or reject any or all of the evidence. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App. 1991). After giving proper deference to the fact-finder's role, we will uphold the verdict unless a rational fact-finder must have had reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App. 2009).

"Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." Tex. Penal Code Ann. § 1.07(a)(8) (West 2010). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (West 2010).

When determining whether a bodily injury meets the definition of "serious bodily injury," the jury may evaluate the seriousness of the injury as it was inflicted, even

3

though its risk of death is not realized, or its disfiguring or impairing consequences are avoided, because of medical treatment. *Brown v. State,* 605 S.W.2d 572, 575 (Tex.Crim.App. 1980), *overruled on other grounds, Hedicke v. State,* 779 S.W.2d 837, 840 (Tex.Crim.App. 1989). In *Brown*, the victim's nose was "broken and deformed," an injury that, according to the evidence, would cause disfigurement and dysfunction of the nose if the bone was not set. The bone was set, but the medical treatment did not make the evidence of serious bodily injury insufficient. *Brown,* 605 S.W.2d at 575. In such determinations, the jury also may apply its common sense, knowledge and experience gained in the ordinary affairs of life as it draws reasonable inferences from the evidence. *Eustis v. State*, 191 S.W.3d 879, 884 (Tex.App.--Houston [14th Dist.] 2006, pet. ref'd).

Although the determination that an injury constitutes serious bodily injury most often is supported with expert medical evidence, such testimony is not essential where the injuries and their effects are obvious. *Ramirez v. State*, No. 13-05-0785-CR, 2009 Tex.App. LEXIS 368, at *12 (Tex.App.—Corpus Christi January 22, 2009, pet. ref'd) (mem. op. not designated for publication); *Carter v. State*, 678 S.W.2d 155 (Tex.App.--Beaumont 1984, no pet.). The victim of injuries also is qualified to express an opinion on the seriousness of those injuries. *Denham v. State,* 574 S.W.2d 129 (Tex.Crim.App. 1978). An appellate court must evaluate each case on its facts to determine whether the injury was of a type that allowed the jury to find it met the definition of serious bodily injury. *Hernandez v. State*, 946 S.W.2d 108,111 (Tex.App.—El Paso 1997, no pet.).

From the descriptions of the lacerations to Merchant's upper right arm and his neck, the photographs of the injuries and the medical records, we find the jury rationally

could have concluded the lacerations to Merchant's arm and neck constituted serious bodily injury. The photograph of the right arm injury shows a gash on Merchant's upper arm. Medical records indicate it was six centimeters long. Merchant said that laceration was stitched in Houston rather than in Huntsville. Asked why, he responded, "It was a pretty deep cut." A police officer who observed Merchant's injuries at the hospital also referred to that injury as "extremely deep."

The cut to Merchant's neck measured twelve centimeters long according to a medical record. Photographs show a gaping wound on the side of his neck, about mid-way between his shoulder and his jaw. A medical record refers to it as being in the "jugular area." It is referred to in the medical records as "deep" and "severe," and at the Huntsville hospital the wound was bleeding in a manner referred to in the records as "severe," but not pulsating. Medical records also indicate the location and nature of that wound lead to Merchant's transfer to the hospital in Houston to rule out injury to major blood vessels.[3] Records of the Houston hospital indicate that the neck wound continued to bleed on his arrival there, despite being "repaired" in Huntsville.

One of the officers testified to his opinion, having observed Merchant's right arm injury, that it would cause permanent disfigurement.[4] Another witness, a police sergeant with fifteen years' experience, testified to his opinion that an injury like that he

---

[3] Merchant testified he was "life-flighted" to the Houston hospital also because his "blood pressure had went extremely too high." Medical records refer both to his "multiple severe lacerations" and his "severe hypertension."

[4] The officer's actual statement, in response to a question asking why he would classify the arm injury as serious bodily injury, was, "Due to the nature of the wound. It's extremely deep and causes permanent disfigurement."

5

observed to Merchant's neck could cause permanent disfigurement. The jury reasonably could have agreed with those assessments of the wounds. We are satisfied from review of the record, viewed in the proper light, that the jury rationally could have concluded that, had they not been treated, the severe lacerations would have left Merchant's neck and arm seriously and permanently disfigured.

Appellant points to the testimony of her expert witness, a trained and experienced critical care paramedic, who testified that from his review of the photographs of Merchant's wounds, they were "superficial" and did not constitute serious bodily injuries. It is the jury who determines which testimony it will accept and which it will disregard. Its weight and credibility determinations are not subject to second-guessing by the appellate court. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Crim.App. 2002); *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App. 1993). The testimony of appellant's expert witness, though contrary to the jury's verdict, does not make the evidence insufficient.

We overrule appellant's first issue.

Amount of Restitution

In appellant's second issue, she challenges the court's award of restitution in the amount of $31,014.35 for medical treatment of Merchant as a condition of her community supervision.

If an offense results in personal injury to a victim, the court may order the defendant to make restitution to the victim for "any expenses incurred by the victim as a result of the offense." Tex. Code Crim. Proc. Ann. art. 42.037(b)(2)(A) (West 2011).

6

When a defendant is placed on community supervision, the trial court may impose as a condition of community supervision a requirement that the defendant pay restitution to the victim of the offense. Tex. Code Crim. Proc. Ann. arts. 42.037(h), 42.12, § 11(b) (West 2011).

A presentence investigation report (PSI) is to contain information including "the amount of restitution necessary to adequately compensate a victim of the offense." Tex. Code Crim. Proc. Ann. art. 42.12, § 9(a) (West 2011). Article 42.037(i) also authorizes the inclusion in a PSI of information pertaining to restitution, which information, according to article 42.037(c) includes "the amount of the loss sustained by any victim." Tex. Code Crim. Proc. Ann. arts. 42.037(c), (i) (West 2011).

The PSI ordered by the trial court is contained in the appellate record. It contains an itemized list of amounts due for Merchant's treatment at the hospital in Huntsville, his "lifeflight" transportation and his treatment at a Houston hospital, totaling the $31,014.35 ordered as restitution by the court. At the sentencing hearing, appellant asserted the position that she was responsible only for some $4000 of the expenses because, she argued, Merchant's transfer to the Houston hospital and subsequent treatment there was made necessary only because his blood pressure spiked, an event she asserted was caused by medication administered at the Huntsville hospital.

In resolving the dispute over the proper amount of restitution, the trial court was, as directed by statute, to apply a preponderance of the evidence standard. The State bore the burden "of demonstrating the amount of the loss sustained by [Merchant] as a result of the offense." Tex. Code Crim. Proc. Ann. art. 42.037(k) (West 2011).

7

Appellant's counsel said at the sentencing hearing that she had never seen the medical bills, and counsel asserted a hearsay objection to the PSI. The trial court correctly overruled the hearsay objection. *See Smith v. State,* 227 S.W.3d 753, 762 (Tex.Crim.App. 2007); *Fryer v. State,* 68 S.W.3d 628 (Tex.Crim.App. 2002). The list in the PSI supported the amounts of the bills from each of the health care providers, and there was no evidence presented to the court disputing the accuracy of the amounts.

Appellant's argument at the sentencing hearing that the expense of Merchant's transfer to Houston actually was caused by the intervening event of his receipt of medication that caused his blood pressure to spike was not supported by evidence. As noted in our discussion of appellant's first issue, Merchant testified during the guilt-innocence phase that he was transferred because of his blood pressure, but the medical records speak of both his severe hypertension and his severe lacerations. On this record, we see no error in the trial court's implicit conclusion that all Merchant's medical expenses were incurred "as a result of the offense." Tex. Code Crim. Proc. Ann. arts. 42.037(b)(2), (k) (West 2011).

We overrule appellant's second issue and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

8